**Ronald E. THOMAS, Plaintiff-Respondent,**

v.

**Earline THOMAS, Now Known as Earline Boyer, by Paul Boyer, Her Next Friend, Defendant-Appellant.**

No. 30936.

St. Louis Court of Appeals.

Missouri.

May 15, 1962.

Husch, Eppenberger, Donohue, Elson & Jones, Ramon J. Morganstern, St. Louis, H. Jackson Daniel, St. Louis, for defendant-appellant.

Walter Pollman, St. Louis, for plaintiff-respondent.

DOERNER, Commissioner.

This is an appeal from an order modifying that part of a decree of divorce relating to the custody of a minor child.

In the interests of clarity the parties will be referred to as they appeared in the original divorce action. Plaintiff, Ronald E. Thomas, then 16 years of age, was married on August 8, 1956, to the defendant, Earline, then 14 years of age. A female child named Sherry was born to them on June 18, 1957. The couple separated on or about September 15, 1958, and on December 30 of that year plaintiff instituted an action for divorce against defendant, alleging general indignities. The minority of defendant was suggested, and a guardian ad litem appointed for her. Defendant filed an answer denying the charges made, and a cross-bill. The record of the divorce action, contained in the transcript of the present proceedings, shows that the defendant did not appear at the trial. In the hearing on the motion to modify plaintiff admitted, on cross-examination, that three or four days before the trial he put defendant on a bus and sent her out of town, knowing that the divorce action would soon be heard. The same record also shows, however, that defendant's guardian ad litem appeared on her behalf at the trial of the suit for divorce. By its decree, dated June 1, 1959, the court awarded plaintiff a divorce and the custody of Sherry, and dismissed defendant's cross-bill for failure to prosecute. There was no provision granting to defendant the right of visitation.

On May 10, 1960, defendant, through her present guardian ad litem, her second husband, filed this motion to modify. She alleged therein her remarriage and her belief that it would be for the best interest of Sherry that she be given custody, and prayed that the decree be modified accordingly. After a hearing the court denied the motion but ordered that defendant should have the right to visit with the minor child at the home of plaintiff at all reasonable times, until the further order of the court, and awarded defendant an allowance of $50 for additional attorneys fees, and her costs.

Presumably disappointed with the partial victory thus won, defendant appealed. She contends that the evidence clearly established a change of circumstances on her part, which showed that the best interests and welfare of the child would be served by transferring custody to her; and that the denial of her motion constituted an abuse of discretion. Defendant's evidence was that since the original decree she had married Paul Boyer, and that they were then living in a three room and bath flat at 1810 South Thirteenth Street in St. Louis. Paul had been a foreman for Wagner Electric Company for 9 or 10 months, earning $114 per week, but about two months prior to the hearing had been laid off. He was temporarily working for a shoe firm at a salary of $50 per week, but expected to be recalled by Wagner in about two months. Defendant supplemented their income by furnishing room and board for two small boys, for which she received $10 per week, but testified that she would discontinue such employment if the custody of Sherry was awarded to her. At the time of the hearing she was pregnant, and in his brief her counsel states that she subsequently gave birth to a daughter.

Plaintiff's evidence showed that since the decree he has likewise remarried, to one Carolyn, and that they had had a daughter who was 5 months old at the time of the hearing. Plaintiff and his family lived in a two-story duplex at 1417 Peacock Lane, Brentwood, Missouri, having five rooms and bath. He was employed as the night service manager of a service station, at a salary of about $85 a week, plus a commission. Carolyn testified that because of their huge indebtedness to the hospital, upon which a negligible amount had been paid, she had obtained employment with an equipment company. She had engaged a middle-aged woman, whom she described as very competent, to look after her own daughter and Sherry during the day.

The evidence showed that between the time plaintiff had filed his petition for divorce and the time the trial was held, and while Sherry, then 20 months old, was in the custody of defendant, the child ingested a product called Drano, containing lye. She was admitted to the City Hospital as an emergency case on February 12, 1959, where she remained for slightly less than two years. During that period, according to plaintiff, she underwent approximately 14 operations necessitated by the scarring and stricture formation in the upper third of her esophagus resulting from the burns which occurred. Gastrostomies had also been performed so that she could be fed by a tube to her stomach while the esophagus was dilated from below. In March, 1960, she was discharged from the hospital, but had to be re-admitted on May 30 of that year because of increasing difficulty in swallowing. Prior to the hearing of the motion to modify, by stipulation of the parties, Sherry was examined by Dr. J. Eugene Lewis, Jr., a physician appointed by the court. In his report, after reciting her history, Dr. Lewis stated that the child's esophagus could be kept open only by continuous dilation. He also expressed the opinion, which he said was shared by the attending physician, that a reconstructive operation was his "treatment of choice." In this operation, he stated, the right colon would be used to by-pass the stricture in the esophagus and would allow the child to swallow without difficulty.

Plaintiff's evidence showed that Sherry had been released from the hospital four days prior to the hearing on the motion. Plaintiff testified that the child had to be returned to the hospital once a week for dilation of the throat by the use of an instrument called a Bugie, and that the hospital staff was planning to train him and Carolyn to that they could use the Bugie at home. He stated that unless the dilation was continued it might be fatal to the child's life. Carolyn testified that the tube to Sherry's stomach had been removed the day before the hearing, leaving a hole in the abdomen through which stomach acid was being discharged. She said that while the hole remained open there was a grave danger of infection, and that to promote its closing alum paste had to be applied. She related further that there was an open wound in the child's neck, where an operation had been performed, which required the application of warm cloths four times a day to promote healing. Defendant offered no evidence that she had had any training in nursing. Paul, her husband, testified that he had been taught first aid and artificial respiration while he was in the Army Transportation Corps. Plaintiff testified, as stated, that he and Carolyn were to be trained by the hospital in the use of the Bugie. Carolyn, who had had two years of college, testified that she had been trained by the doctors and nurses at the City Hospital to care for Sherry. She further stated that she had received training in nursing while in the student nursing association in high school, had also been taught first aid by her father, and that her sister was a trained nurse.

■■ In her brief defendant argues that since the rendition of the original decree, when she was 17 years old, she has "aged, matured, and remarried," to quote her, and that she now has a home in which to care for Sherry. For the purposes of this case it may be conceded that her evidence of her remarriage and the establishment of a home was proof of a change of condition. See Noble v. Noble, Mo.App., 341 S.W.2d 307; Gianformaggio v. Gianformaggio, Mo.App., 341 S.W.2d 293. But mere proof of a change of condition since the rendition of the original decree, standing alone, is not sufficient. Inasmuch as the welfare of the child is the guiding star in matters of this nature, there must be not only proof of a change of condition, but it must be shown to be such a change that the welfare and best interests of the child will be beneficially affected by a modification of the decree. McCoy v. Briegel, Mo.App., 305 S.W.2d 29; Lewis v. Lewis, Mo.App.,

# 211

301 S.W.2d 861; Schumm v. Schumm, Mo. App., 223 S.W.2d 122.

 The rule that "what is best for the child" is the supreme consideration in determining custody is particularly applicable in this case. The very life of this unfortunate child depends upon receiving proper nursing care and attention, including the continuous dilation of her esophagus by the use of a Bugie. Plaintiff's evidence showed that Carolyn, plaintiff's wife, had had special training in nursing, that she had been taught by the doctors and nurses at the City Hospital to care for Sherry, and that plaintiff and Carolyn were to be trained to use the Bugie, so that they could give the child the vital treatment. Conversely, there was no evidence offered on behalf of defendant that she or her husband had ever received any training in nursing, except for the first aid course he had been given while in the Army, nor was there any evidence indicating that they were to be taught to use the Bugie. Defendant stresses that she would not be employed, while plaintiff and his wife both work, and this is indeed a factor in her favor. However, because of their varying hours of employment, either plaintiff or Carolyn would be at home and available during the child's normal waking hours, except for a relatively short interval.

While it is our duty to review the whole record in matters of this nature, and arrive at our own conclusions, it has been repeatedly recognized that in performing this duty we must bear in mind that the findings of the trial court should not be lightly disturbed. In fact, such findings will ordinarily be deferred to, unless, from a consideration of all the facts and circumstances, it appears that said findings are in conflict with a clear preponderance of the evidence so as to disclose a manifest abuse of judicial discretion. Noble v. Noble, supra; Birrittieri v. Swanston, Mo. App., 311 S.W.2d 364. In the light of the evidence in this case we are of the opinion that no manifest abuse of discretion is

disclosed, and that the trial court reached the correct decision.

Accordingly, the Commissioner recommends that the judgment be affirmed.

PER CURIAM.

The foregoing opinion by DOERNER, C., is adopted as the opinion of the court. Accordingly, judgment is affirmed.

ANDERSON, P. J., WOLFE, J., and ELGIN T. FULLER, Special Judge, concurs.