Mary ENGLER, Plaintiff-Respondent,

v.

Robert ENGLER, Defendant-Appellant.

No. 33611.

St. Louis Court of Appeals, Missouri.

May 26, 1970.

James S. Golden, Donald S. Hilleary, Clayton, for defendant-appellant.

Ackerman, Schiller & Schwartz, Theodore F. Schwartz, Clayton, for plaintiff-respondent.

BRADY, Judge.

The trial court sustained the plaintiff's motion to modify, transferred custody of the parties' daughter, Connie, to her, ordered defendant to pay $20.00 per week as support, and awarded plaintiff $500.00 as attorney's fees. Defendant appeals.

The original divorce was granted in 1958 to defendant upon his cross bill. A daughter, Connie, and a son were born of this marriage. As to Connie, plaintiff was granted temporary custody on alternating weekends, for two weeks in the summer, and reasonable visitation privileges during the week. Trial was in March of 1969. Connie became 16 that May. She had left her father's house to live with her mother in November of 1968. The son's custody was not a part of the motion to modify and he remains in the custody of his father.

The motion to modify alleged in Paragraph 1 the custodial grant to defendant as to Connie; in Paragraph 2 "That plaintiff Mary Engler is now able to care for said child and that said child is fifteen years of age and desires to have the companionship of her mother"; and in Paragraph 3 that Connie's best interests would be served by transferring her custody to plaintiff.

A motion to modify a decree of divorce is in the nature of an independent proceeding and the motion is treated as a petition in an original action. Wood v. Wood, Mo.App., 378 S.W.2d 237, 1.c. [1–6] 239, and cases there cited. A claim upon which relief can be granted must be stated

in the motion. Wilton v. Wilton, Mo.App., 235 S.W.2d 418. The only requirement is that it sets forth such facts and circumstances occurring since the entry of the original decree which, if proven, will require the court to find the child's best interests will be served by granting the petitioner the relief desired. Olson v. Olson, Mo.App., 184 S.W.2d 768. These should be set forth in the motion in sufficient detail to inform the opposite party of the facts to be relied upon for modification. Mahan v. Mahan, 239 Mo.App. 317, 192 S. W.2d 626. In the instant appeal the allegation of facts set forth in the motion were that plaintiff is now able to care for Connie, that Connie is fifteen years of age and that she desires to be in the custody of her mother. We will confine our recital of the facts to those tending to prove or disprove those allegations.

The allegation of the motion as to Connie's age is uncontroverted and of course is a matter of simple arithmetic. Equally established is Connie's desire for "the companionship of her mother". As to this issue, Connie testified she would rather live with her mother; is unhappy at her father's and had "crying spells" during the two weeks before she left; that she needs her mother to talk to as she was unable to communicate with her father who she contended was very opinionated and unable to discuss matters; and objected to the living conditions in her father's home which although she admitted were clean she characterized as "cluttered". The only controverted fact alleged in the motion was that plaintiff "is now able to care for said child".

Since the other two allegations of the motion to modify are in essence uncontroverted we will not burden this opinion with the recitation as to further facts tending to prove those allegations. We will consider

them proven. We will confine ourselves to the facts going to the real issue upon which the parties directed the great portion of their testimony. This issue was plaintiff's ability to care for Connie which was inquired into in respect to the physical conditions under which plaintiff and Connie lived; plaintiff's income; her attitude, character and associations; and her ability to care for Connie with respect to giving her the guidance the child needs.

The evidence [1] was that plaintiff lived with her illegitimate son and Connie in a four-room home she purchased. She is employed as manager, waitress and cashier at Bandera's Restaurant where she makes approximately $45.00 a week in salary and $100.00 in tips. She has been there for some four and a half years. Her illegitimate son was the result of a liaison with one Rosenberg while she was married to defendant,[2] which relationship led to the divorce. She admitted that she goes out once or twice a week with her employer, Paul Bandera, on "dates" although she knows he is married. She testified Bandera was separated from his wife. When she is out with Bandera she regularly kisses him but she testified: "I kiss a lot of my customers too", and "I don't think it is improper to kiss anyone, he or anyone else." But plaintiff testified she does not go "any further". She and Bandera had discussed marriage when he gets a divorce. Plaintiff testified she would continue to go out with Bandera even if he does not get a divorce and that she saw nothing improper in this conduct. She told Connie Bandera was separated from his wife; she would not tell her if he was not as it was not important. She has told Connie she thought her relationship with Bandera was proper and does not feel she sets Connie a bad example by so acting. Bandera had been to her home after work for breakfast once or

---

1. In so stating the facts we have included those the trial court improperly excluded upon objection and to which ruling an offer of proof was made. Civil Rule 73.01(d), V.A.M.R.

2. She asked for and received $600.00 from Rosenberg to have an abortion to prevent the birth of this child.

twice in the past year. He stayed from about 4:00 or 4:30 until 6:00 A.M.

Paul Bandera was a witness for defendant. The gist of his testimony was that his relationship with plaintiff was for business reasons only. "Q Why do you take her out if you are a married man? A For business. It's good business. Q How is it good business? A It gets me around town, lets people see me. They see me and they come to my place." His wife was aware of their going out together. He is not separated from his wife of some eighteen years nor has he ever been. He takes plaintiff "Because we live quite a ways from here and I am at work and I decide on leaving and I am not going to drive twenty miles and pick her up and take her, so I just go. Q And so you just take any girl that is nearby and it is just as effective? A Yes." His evidence agreed with plaintiff's as to the frequency of these occasions with plaintiff. He testified he has other female companionship besides plaintiff stating they were customers whom he took out for dinner. His records show plaintiff was only reporting about half of her tips as income for tax purposes.

When plaintiff was recalled to the stand for rebuttal she testified that since she had learned Bandera was not separated she did not intend to see him again socially but would continue working for him. Since Connie has come to live with her she has made no attempt to get a daytime job. When Connie first came to her from her ex-husband plaintiff did not urge her to return or to follow the orders of the court. When asked if doing so ever occurred to her she stated it had not "Because I wanted her to live with me." She also testified her attorney, Mr. Schwartz, did not advise her to tell Connie to return but stated he would file a motion to change the custody and that Connie need not return in the meantime if she did not want to.

About seven years prior to trial she had trouble getting credit under the name of Engler and so used the name of "Mary Kellog" and gave her address as Litchfield, Illinois, when she bought some furniture. She also stated she had lived in St. Louis one year before that purchase. All of this was totally false. She was asked if she thought that was a proper thing to do and answered she didn't think about it, " * * * I just wanted some furniture and I just changed my name and bought the furniture."

She has taken Dexedrine on occasion when she wanted to be alert with the children. She knew you needed a prescription to obtain this drug but obtained hers without one from a pharmaceutical student.

Although plaintiff stated she was not trained in music in any way, she testified she had let Connie quit her music lessons her father had arranged for her because "She has absolutely no talent". Plaintiff also testified Connie plays in the school orchestra at Roosevelt High School and can read some music. She never inquired at the school concerning Connie's musical ability.

Other testimony going to plaintiff's character, attitude and associations was that about four years before moving to her present home she had been evicted from an apartment because of complaints that parties were going on at all hours in her apartment. She testified that she had given the keys to this apartment to a Cathy McCullah but Cathy had denied that these parties were going on. Plaintiff testified she later found out Cathy had misinformed her. Cathy McCullah is the daughter of the Mrs. McCullah who lives two doors away from plaintiff's present address and who checks on Connie while her mother is at work during the night and whom plaintiff described as being a very close friend. Cathy's activities at plaintiff's apartment were the subject of testimony given by defendant's witnesses Boncek and O'Donnell both of whom testified they complained to the landlord about the parties Cathy was carrying on in plaintiff's apartment. In addition, O'Donnell testified that three,

four or five times a week while she lived at this apartment plaintiff would return home from work accompanied by a man. They would arrive at the apartment approximately 1:30 or 2:00 and sometimes stay until daylight.

The evidence as to Connie's living quarters at her mother's shows that she shares her mother's bedroom at the present time but that her mother intends to remake a room in the attic as a bedroom for Connie. Connie gets home about 4:15 or 4:30 in the afternoon and her mother leaves home at 5:00. In addition to the testimony summarized earlier in this opinion as to Connie's preference to live with her mother and the reason why, Connie testified she missed her mother very much and looked forward to their weekends together. The weekends were the only times her father would let her see her mother. Her father has not been to see her since she came to her mother's but he calls her on the telephone once a week. Her grades in school are about the same as they were when she lived at her father's; she has improved in English but is flunking History. Connie testified she gets to go out one night a week, on Friday nights, until 11:00 o'clock and that when she comes in past that hour she is punished by losing her Friday night privileges for the next two or three weeks. Since she has lived with her mother she has missed curfew only twice. She testified she obeys the rules her mother has established for her hours and conduct. She was not allowed to smoke at her father's but she did so, and she smokes now although her mother discourages it. For about a year her father worked nights and left her and her brother alone. That did not bother her and neither is she concerned about her nights at her mother's. While at her father's she attended church on a very regular basis although her father did not attend with her. Since she has been at her mother's she has missed church for the last two or three Sundays. She is aware of her mother's relationship with Bandera and sees nothing wrong with it. She was of the opinion if she were older it would be all right for her to date a married man provided he was separated, but she denied her opinion was based on the fact her mother was doing so.

There is nothing in the evidence given by the defendant that would in any way be of assistance to plaintiff in bearing her burden to show a change of conditions requiring change of custody. For that reason his evidence will not be summarized here.

At the conclusion of the hearing the trial court was asked to enforce the existing order as to custody. The court declined and when asked why stated: "Because the Court is concerned with the welfare and happiness of the child, and she said in Court under oath, that she is happy with her mother. MR. HILLEARY: Then in, in effect, it seems to me that you are not enforcing this present order, I am wondering if that is the net result of the thing? THE COURT: In view of the circumstances, I don't know if the order is enforceable. MR. HILLEARY: What circumstances are they, Your Honor? THE COURT: Where the custody order was put in when she was five years old. She is ten years older and said she is unhappy with her father. MR. HILLEARY: You think that makes the order unenforceable, at this time? THE COURT: I think it apprises the Court of such facts to take action on the matter. I am not going to, anyway. MR. HILLEARY: There is nothing I can say or do to ask you to enforce the present order, is that the situation? THE COURT: That's right."

In the memorandum and order of the court it recited the fact that Connie was ten years older than she was at the date of the divorce and is capable of some judgment of her own; that plaintiff has been steadily employed in the same position for the past six years and has bought a home; that the mother is able and willing to care for the daughter; and that Connie prefers to live with her mother. The trial court

sustained the motion for custody and granted defendant temporary custody of Connie at times to be mutually agreed between the parties.

There is another matter that requires the recitation of some facts. The trial court also ordered defendant to pay plaintiff $20.00 per week for the support of Connie and attorney's fees in the amount of $500.-00. The evidence in this case bearing upon this matter shows that the plaintiff earns approximately $145.00 to $150.00 per week gross. It further appears that she had a checking account which is only big enough to pay the monthly bills, and $1,-000.00 that she received from her father's estate in a savings account. She had a $3,000.00 equity in her home. The only other evidence bearing on this issue is that defendant makes $650.00 per month gross and $490.00 net.

■ It is obvious from the trial court's memorandum that it based its judgment, in the main, upon the fact that Connie was ten years older at the hearing for modification than she was at the date of the divorce decree and that plaintiff has been steadily employed and has bought a home. This court has repeatedly held and it has long been the rule in this state that neither the passage of time nor the establishment of a home constitutes such changes of conditions that require a modification of custodial order. See J v. E, Mo.App., 417 S.W.2d 199, l.c. [10–12] 204; Thomas v. Thomas, Mo.App., 357 S.W.2d 208, l.c. [1, 2] 211. It follows that the trial court's order cannot be sustained on those grounds even though the evidence clearly establishes them. There is nothing in those facts alone nor is there anything in the other evidence which shows that those facts require the change of custody to serve the best interest or welfare of the child. In this respect see also Fordyce v. Fordyce, Mo.App., 242 S.W.2d 307, l.c. 314, where we said: "The fact that the children have grown older in and of itself is no sufficient change of condition to warrant a change in custody. That was a

contingency to be normally expected and the change from childhood into adolescence is one which it is to be presumed the trial court took into consideration in making the original decree in the infancy of the children."

■ Another ground for the trial court's action was that Connie prefers to live with her mother. Again, this is established by undisputed testimony and there is no doubt but that her wish is entitled to consideration especially when she has reached the age that Connie has. However, even Connie's express wishes are not be be indulged if they are inconsistent with the furtherance of her welfare. Graves v. Wooden, Mo.App., 291 S.W.2d 665, l.c. 669. The undisputed fact that Connie wants to live with her mother furnishes insufficient basis for the award of custody to plaintiff.

■■ The last ground upon which the trial court based its decision was that plaintiff is able and willing to care for Connie. It is true that the evidence shows some change in conditions bearing on that issue. Plaintiff now has a home and steady employment. Evidently her liaison with Rosenberg has concluded and she is raising the child that resulted therefrom. There are other changes. But that is not the test. The test is whether the changes in conditions are such that Connie's welfare requires a change of custody. Irvine v. Aust, Mo.App., 193 S.W.2d 336. See cases collected Mo.Digest, Divorce, ⬤◌ 303(2). The changes that the evidence shows exist in this case must be considered in the light of plaintiff's association with married men in the past and at present; her attitude toward her association with Bandera and her justification of it to Connie; her use of a fictitious name and address to secure credit; the fact she is not reporting all of her income for tax purposes; the evidence she obtained drugs which she knew required a prescription and did so without one; her testimony it never even occurred to her to return Con-

nie to defendant or to follow the orders of the court because "I want her to live with me"; the fact that she works at nights and has made no attempt to get a daytime job even since Connie has been with her with the result that plaintiff sees Connie only for about a half hour or forty-five minutes before she leaves for work and in the morning before Connie leaves for school; and the fact that although Connie has enough musical ability to play in the school band and can read some music plaintiff, who admits to possessing no ability in that field, has stopped Connie's training in music on the grounds she has no talent. When we do so we cannot consider Connie's welfare requires a change of custody. Plaintiff's influence upon Connie is clearly shown in Connie's statement that she saw nothing wrong with it either, nor would she see anything wrong in so doing when she reaches a later age in life. Plaintiff's statement upon rebuttal that since she had discovered Bandera was not in fact separated she would no longer see him socially strains credulity. The transcript is replete with instances indicating she knew he was living at home with his wife all during this period. All of the evidence indicates a frame of mind on plaintiff's part tending to place her personal desires of the moment above all other considerations and evidencing an attitude which cannot be held to be conducive to the proper rearing of a teenage daughter.

■ There is another matter which, although not requiring our ruling at this time, we think we must take note of. That matter deals with the conduct of plaintiff's counsel in this case. In his brief plaintiff's counsel, Mr. Schwartz, describes the testimony concerning the evidence as to plaintiff's obtaining drugs in this fashion: "When asked if she knew that a prescription was needed she rhetorically stated 'You do?' (Tr:27)." The evidence appearing upon that page of the transcript is much different. Therein it appears that plaintiff was asked if she knew if she needed a prescription to get Dexedrine and her answer was "Yes, you do." Two questions later she was asked "You do need a prescription for that, to get it?" And she replied "You do." No question mark appears and in view of her earlier testimony, counsel's statement she was answering rhetorically is totally without foundation. Counsel will do well in the future to stick with the facts and to recite the testimony as it actually appears. This court will not countenance deliberate misstatements by counsel in this or any other case. Neither is it powerless in the event such a procedure is repeated. Further, we are aware we are not required to accept as true plaintiff's statement Mr. Schwartz did not advise her to tell Connie to comply with the custodial order then in full force and effect and in fact advised her that she and Connie need not obey that order if Connie did not want to pending the motion for modification. Nevertheless, we cannot completely disregard such testimony. If it is a fact, then counsel has advised a deliberate violation of a valid order of the court.

■ By refusing to require Connie's return to her father pending its ruling, the trial court in effect countenanced a deliberate and willful violation of a then valid order of custody. As the trial court indicated, Connie's wish to be with plaintiff and her advance in age were the reasons it changed her custody. It did not do so as a result of any violent or traumatic disagreement between Connie and her father. There is no evidence of that nature. So far as the difficulty of enforcement is concerned this record does not disclose plaintiff is so bent upon resistance that she would have attempted to subvert its order returning Connie to her father pending the trial court's ruling. In any event, such speculation must not overweigh a trial court's clear duty to uphold a validly rendered judicial decision. The trial court refused to order compliance with the custodial provision of the divorce decree even during the month it had the motion to modify under submission. The seriousness

of the consequences that would necessarily flow from such action should it become accepted practice by trial courts compels this expression of disapproval.

Defendant does not advance any contention the award of $20.00 per week support was improperly entered and due to our decision reversing this judgment ruling upon that issue becomes unnecessary. Defendant does attack the award of attorney's fees of $500.00 contending: 1) plaintiff's own evidence showed she had sufficient money to pay her attorney's fees, and 2) there was no evidence the sum decreed was a fair and reasonable charge for the services rendered. While allowances for counsel fees in proceedings of this nature are largely discretionary with the trial court such a discretion is to be exercised in view of the circumstances of both parties. The test is whether the wife is possessed of sufficient means on her own to prosecute the suit for if she has such means then the husband is not required to meet those expenses. Baer v. Baer, Mo.App., 51 S. W.2d 873, 1.c. 880; and see cases collected Mo.Digest, Divorce, ☞225. The facts in the instant case bearing upon this issue show that the parties earn approximately the same amount gross. There was no itemization of the expenses of either. While there was no other evidence bearing upon the husband's financial resources the evidence was that plaintiff had a checking account to cover monthly bills and $1,000.-00 in a savings account. In addition, she had an equity of approximately $3,000.00 in her home. It does not clearly appear whether defendant owns his home or is renting, but a fair inference to be gleaned from all the transcript is that he owned a home although whether or not he had any equity does not appear. There is no evidence he has any savings or checking account. Under such circumstances we believe the plaintiff has not borne the burden of showing she is not possessed of sufficient means to prosecute this motion, and the award of attorney's fees to plaintiff was an abuse of discretion. A decision

upon that basis renders unnecessary a ruling upon defendant's second attack as to the award of attorney's fees.

The judgment is reversed.

WOLFE, P. J., and DOWD, J., concur.