**Linda Kay (Black) GALEENER,
Plaintiff–Appellant,**

v.

**Russel Alan BLACK,
Defendant–Respondent.**

**No. 11512.**

Missouri Court of Appeals,
Southern District,
En Banc.

Sept. 10, 1980.

Motion for Rehearing or to Transfer to
Supreme Court Denied Sept. 25, 1980.

Application to Transfer Denied
Nov. 12, 1980.

Charles (Ed) Lee, Walker, Salveter & Stoner, Springfield, for plaintiff–appellant.

Jay P. Cummings, Springfield, for defendant ·respondent.

GREENE, Judge.

Plaintiff and defendant were formerly husband and wife. They were divorced in December of 1973, at which time plaintiff was awarded custody of their only child, a son, Dwayne Alan Black, who was born on November 8, 1967. Plaintiff was also awarded $75 per month as child support, and defendant was awarded reasonable visitation rights.

On March 19, 1979, plaintiff filed a motion to modify the decree in regard to child support, requesting that the amount be raised to $300 per month. Defendant filed an answer to the motion to modify, and also

filed what is denominated as a counter–petition. In the counter–petition, defendant asked for custody of his son, who was now 11 years old. He alleged, among other things, that there had been a substantial change in the circumstances of the parties since the date of the divorce in that 1) his son desired to live with him and not with his mother; 2) he could provide proper care and supervision for the child; and, 3) plaintiff was engaged to marry a man residing in the state of California, which marriage would result in her leaving the jurisdiction of the state of Missouri and moving to California, against the wishes of the child, the defendant, the paternal and maternal grandparents, and against the best interest of the child.

On May 25, 1979, defendant filed for a temporary restraining order, which order is not a part of the record. We assume that it was a request for the court to prohibit plaintiff from removing the child from the state of Missouri, unless she was given permission to do so by the court. Evidently, by agreement of the parties, the motion for a temporary restraining order was disposed of by a court order permitting plaintiff to take the child with her to California on May 29, 1979, and ordering her to return the child to respondent, in Springfield, Missouri, by July 8, 1979, so that the child could be with his father until July 25, 1979, which was the date set for the hearing on the motions to modify.

The hearing was held on that date, continued for further testimony until July 30, 1979, and was concluded on that date. The transcript indicates that eleven witnesses were heard. Their testimony covered 197 transcript pages, 34 of which concerned the testimony of the child, who was questioned in the chambers by the trial judge and by the attorneys for both parties.

On August 10, 1979, a decree and judgment was rendered. In the judgment, the trial judge overruled plaintiff's motion to increase child support, and sustained defendant's motion to modify child custody.

The care and custody of the child was placed in defendant, with plaintiff being awarded certain visitation and temporary custody rights which are not an issue here. Plaintiff filed an after trial motion to amend the judgment, so that plaintiff would be awarded custody of the child, and that defendant be required to pay reasonable child support. The motion was overruled. This appeal followed.

■ Plaintiff's sole point relied on is that "The trial court erred in sustaining respondent's counter–motion to modify child custody and in transferring custody of Dwayne Alan Black to respondent because the respondent failed to offer substantial evidence of a change in circumstances that would necessitate such a transfer to serve the best interests of the said child." As stated, the point violates Rule 84.04(d)[1] in that it does not state wherein and why the actions and rulings of the trial court are claimed to be erroneous. As written, the point is merely an abstract statement, in that it fails to specify any evidence, or lack of it, that made any action or ruling of the trial court supposedly erroneous. *Carrell v. Carrell*, 503 S.W.2d 48, 50 (Mo.App.1973). In addition, the statement of facts in plaintiff's brief consists of a single page, devoid of any specific page references to the transcript, and is almost entirely devoted to the legal history of the case. As written, it is inadequate, and violative of Rules 84.04(c) and 84.04(h). Were it not for the fact that the welfare of a minor child is involved, plaintiff's appeal would be dismissed for the rule violations noted above, but, in fairness to the minor child, we review the imperfectly tendered issue of whether the evidence was sufficient to support the judgment of the trial court. *In re Marriage of L——*, 548 S.W.2d 262 (Mo.App.1977).

■ A judgment of a trial court ordering a change in custody of a minor child is required to be affirmed unless the judgment was not supported by substantial evidence, was against the weight of the evi-

---

1. Unless otherwise indicated, all references to rules are to Missouri Rules of Court, V.A.M.R., and all references to statutes are to RSMo 1978, V.A.M.S.

dence, or was the result of an erroneous declaration or application of law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In view of the fact that the trial court is in a better position not only to judge credibility of witnesses directly, but also their sincerity, character, and other trial intangibles, which may not be completely revealed by the record, our review is based on the presumption that the trial court studied all of the evidence thoroughly and decreed custody in the manner it believed would be in the best interest of the minor child. *L.H.Y. v. J.M.Y.*, 535 S.W.2d 304, 306 (Mo.App.1976).

■ In its judgment and decree, the trial court indicated that it had considered all relevant factors, including those specifically listed in § 452.375, in making its determination as to who should have custody of the child. Section 452.375 states that:

"The court shall determine custody in accordance with the best interests of the child. The court shall consider all relevant factors including:

(1) The wishes of the child's parents as to his custody;

(2) The wishes of a child as to his custodian;

(3) The interaction and interrelationship of the child with his parents, his siblings, and any other person who may significantly affect the child's best interests;

(4) The child's adjustment to his home, school, and community; and

(5) The mental and physical health of all individuals involved."

The transcript reveals the following facts relative to such factors. Both parents wanted custody of their son, so the wishes of Dwayne's parents as to his custody were in conflict. Dwayne wanted to stay with his father in Springfield, Missouri, and did not want to move to California to live with his mother and new stepfather. The trial judge, after lengthy questioning of the boy, in regard to his competency to make such a decision observed, "He seems a very polite and intelligent young man, and I thought he was very good at expressing himself."

The record upholds such observation, and indicates that the child's desire to live with his father was an informed and reasoned choice. During his testimony Dwayne was asked, "Do you remember roughly how long after you found out your mother would be moving to California, your mom and George [the new stepfather] roughly how long after that you decided you'd like to stay here with your dad?" His answer was, "Well, I found out, you know, at first, you know, that she was going to get married, and I thought, oh, great, we're moving to California, and I'd get to see movie stars and I'd get a dog, but then I thought about leaving my family, my dad and everybody else, and, you know, about the state, and I thought, well, I'll go out there and, you know, see if it's some place that I would like to live, and I had already talked to my dad about maybe wanting to stay here, you know, and we went out to the wedding and then came back and I went to talk to my dad and told him that I wanted to stay here." Other questions and answers bearing on this issue of his informed choice were:

"Q. Now, if you went out to live with your mom, George would be your stepfather, do you understand that?

A. Yeah.

Q. Do you have any feelings about being raised by George, at least part of the time during the school year or

A. Well, I've got a couple of feelings. One, I just don't want another father. Two, it would probably—it wouldn't—well, it probably would make a little bit of difference if he didn't live in California, but if they lived in Springfield. Three, I just want to live with my real dad."

Plaintiff, in her brief, argues that Dwayne's choice was not an informed and intelligent one, in that he was immature and easily swayed, and that his father had tried to sway his decision by instilling in him a fear of the schools in California. She tried to establish this alleged fact through testimony to that effect by a clinical psychologist, Cliff Whipple, who had been re-

tained by the mother. Dr. Whipple had only talked to the boy on one occasion for 25–30 minutes and had administered some psychological tests to him. He had also talked to and tested the mother, but had not talked to or tested the father. Defendant denied that he had told his son that the California schools were bad, and testified that he had tried to allow his son to make an independent judgment on the move to California, free from the influence of the father. Evidently, the trial court disbelieved the testimony of the psychologist on this issue, and believed the testimony of the father, which it had a right to do. Conflicts in testimony should be resolved by the trial court and should not be subject to appellate judicial second guessing.

Evidence on the statutory factor of interaction and interrelationship of the child with his parents, his siblings and any other persons who might significantly affect his best interests was that Dwayne had excellent relationships with his maternal grandparents and his paternal grandmother (his paternal grandfather has died since trial). All of them live in the Springfield, Missouri area. His close friends are in Springfield, as are his past teachers and pastor. On the other hand, Dwayne's relationship with his stepfather, George Galeener, is tenuous at best. George, the first cousin of plaintiff, is a deputy sheriff in Los Angeles County, California. As such, he works shifts which include night work. When asked if George did things such as sports when the boy was visiting in California, Dwayne said, "Well, George is a night cop and he works all night and sleeps all day and then goes back to work at night." George has two sons by a previous marriage, and Dwayne was not too happy with the prospect of having one of them as a stepbrother.

The evidence indicated that Dwayne was well adjusted to his home, school and community environment in Springfield, and there was evidence that defendant's mental and physical health were such as to qualify him as custodian of his son.

In our opinion, considering all relevant evidentiary facts and circumstances, there was substantial evidence to support the judgment of the trial court. We recognize the fact that male children growing out of tender years need, and will be benefitted by a father's influence and guidance, assuming that the father is a person of appropriate character to provide such things. *Blair v. Blair*, 505 S.W.2d 444, 447 (Mo.App.1974). The character of the father here to provide proper care and guidance for his son is not open to any serious question.

The judgment of the trial court was based on a change in circumstances and was in the child's best interests. It is supported by substantial evidence, is not against the weight of the evidence, and is not the result of any erroneous declaration or application of law.

The judgment is affirmed.

FLANIGAN, C. J., and TITUS and MAUS, JJ., concur.

HOGAN, J., concurs and files concurring opinion.

BILLINGS and PREWITT, JJ., dissent and file dissenting and concurring in dissent opinions.

HOGAN, Judge, concurring.

I fully concur in all that is said in the principal opinion. Nevertheless, I wish to state my reasons for concurrence specially, in the sure and certain knowledge that I shall sound officious and repetitive.

In the first place, there is much respectable authority, apart from § 452.375(1) and (2), RSMo 1978, for the proposition that upon a motion to modify, a child's articulated preference, provided he is mature enough to make a discriminating choice, is a factor as much entitled to consideration as changes in the child's environment, the parents' behavior, or any other fact or circumstance which can be called a "change of condition." *Cook v.Cook*, 77 U.S.App.D.C. 388, 135 F.2d 945, 947 (1943); *Vilas v. Vilas*, 184 Ark. 352, 42 S.W.2d 379, 381–382[1][2] (1931); *duPont v. duPont*, 216 A.2d 674, 680–681[21, 22] (Del.1966); *Hepler v. Hepler*, 195 Va. 611, 79 S.E.2d 652, 658–

659[12][13] (1954); 2 Nelson, Divorce and Annulment, § 15.19 at 260–263 (2d ed. 1961). I feel very strongly that if we undertake to decide at second hand the *weight* to be accorded a child's preference, and to decide that he was gulled into testifying as he did, we usurp the trial court's function.

I have declaimed as fervently as any judge in support of the natural mother's right to the custody of her child, *Stockton v. Guthary*, 415 S.W.2d 308, 312–313[7, 8][9–11] (Mo.App.1967), but Dwayne is no infant, dependent on his mother for his ordinary, everyday needs. In my view, the controlling circumstance in this case is that Dwayne is beginning his period of puberty and adolescence. Above all, he needs a familiar, stable environment in which to cope with the physiological and psychological stresses he will experience. It has been said that:

> "Adolescence is usually considered a period of severe physiological and psychological stresses for the average child during which he engages in the psychological process [known] as ego–synthesis, whereby he forms his adult identity. The physiological changes occurring during adolescence are believed to alter radically [the child's] drives and desires; he now inspects and evaluates the tentative personality he has developed during his childhood and forms a new 'adult' personality. . . . Moreover, . . . the child's pubertal strivings to form a consistent identity are usually facilitated by continuity of relationships within his family, peer groups, and environment."[1]

In my opinion, the plaintiff's new marriage and removal to a much different environment will require a considerable adjustment on her part; it is more than likely that Dwayne's removal from familiar circumstances into close association with unfamiliar custodians would result in undesirable emotional trauma at a time when he is ill–equipped to deal with it.

1. A. Freud, *Adolescence*, 13 Psychoanalytic Study of the Child 255, 268–269 (1958), cited in Note, Alternatives to "Parental Right" in Child

Finally, I would note that the trial court's decree does not deprive the child of substantial association with his mother; he will have visits with his mother and her recently–acquired spouse. As he matures, he may, and in all probability will, decide for himself whether he prefers to live with his father or with his mother, and act accordingly. I therefore concur.

BILLINGS, Judge, dissenting and concurring in dissent of PREWITT, J.

Custodial mothers beware! The majority opinion dooms you to imprisonment within the territorial boundaries of Missouri or risking the loss of custody of your child if you move to another State, particularly, where the child is a boy and tells the trial judge he had rather stay here in Missouri with his father. Regardless of better opportunities in the remaining 49 States, whether for more gainful employment, educational pursuits, a new marital home (as here) or, simply to begin life anew, the principal opinion should serve as an unmistakable warning of the attitude of a majority of this court in the matter of custody of children. The fact that we are living in a highly mobile society in a jet age is of no meaning and removal by a custodial mother from our fair State to a sister State can result in a custody modification which takes custody of a 12-year-old boy away from his mother, even though she was initially awarded custody and has had such custody for the seven years following the parents' divorce.

Since the time of Solomon man has struggled to find the right solution to the matter of custody of children when disputes arise between adults. The best interests of the child and welfare of the child is the overriding and paramount consideration and the courts of this land have strived to follow this principle as a guiding star. In the vast majority of reported decisions in this State the appellate courts have, and rightly so, given much deference to the trial courts in

Custody Disputes Involving Third Parties, 73 Yale L.J. 151, 167, n.67 (1963).

the award of custody. However, we would be remiss in our duty, as a reviewing court, if we automatically apply the deference rule in custody awards. There is not, in my opinion, a sufficient change of circumstances to warrant the instant change of custody. The evidence in this case falls far short of demonstrating that the best interests and welfare of the child will be best served by the modification order. I am convinced the trial court was wrong and that the best interests and welfare of the child call for him to continue to be with and reared by his mother.

In this case it should be kept in mind that this is not an original award of custody situation, but a modification of the original award of custody to the mother in 1973 when the boy was some five–years–old. When these proceedings commenced the boy was 11 and is now 12–plus years–of age. Until shortly before this case was filed the boy had lived his entire life with his mother, a strong and relevant fact to be considered.

Ironically, for the mother, these proceedings were triggered by her filing a motion seeking an increase in the $75 monthly child support allowance entered in 1973 when the mother and father divorced. She had reared her son for six years and except for the monthly award had received scant financial help from the father. She had incurred medical bills on behalf of the boy by reason of a blood disorder that he had developed. She was facing anticipated bills of $1,000 to $3,000 for corrective dental work for her son. The increased age of the boy called for more money for the necessities of life. Inflation had taken its toll. And, because of her proposed marriage to a California resident she planned to terminate her Springfield employment as a teacher and move to California to her new marital home.

The father, full–time employed, lived with his parents in Springfield [the paternal grandfather died shortly after the trial court proceedings]. He had exercised his visitation privileges with his son over the years, usually on weekends, and on such occasions the boy stayed with the father at the paternal grandparents' home. When the mother filed her motion for increased support for the boy, the father countered, as often is the case, with a request that the original custody award be modified and that the boy's custody be placed with him. Various grounds asserting changes of conditions were alleged by the father, but the *only* change in circumstances supported by the record is that the mother planned to marry and move to California. Ancillary to the proposed move, it was alleged and proved the boy wanted to remain in Springfield with his father.

The boy had lived his entire life in Springfield. Both sets of grandparents lived in Springfield. His friends and schoolmates all lived nearby. He expressed fears of violence in attending California schools, fears which the record strongly indicates were instilled in him by his father. Although the father had not made any contribution toward the boy's medical bills, despite requests of the mother, special and expensive gifts (boat, dirt bike, 10–speed bike, motorcycle) had suddenly surfaced or been dangled before the youthful eyes of the boy shortly before these proceedings. The visitations the father and son spent together were often spent doing fun things (camping, riding motorcycles, hunting, fishing, etc.), not uncommon activities when one divorced parent spends limited time with a child. Small wonder that the boy told the trial judge he had rather stay in Springfield and live with his father, rather than live in a family atmosphere in California with his mother and stepfather and attend classes where "kids come to school with knives and guns."

The mother and her new mate have a suitable home. The mother testified she planned to forego her teaching career in order to devote full time to her duties as wife and mother. Her husband, a gainfully employed law enforcement officer, was willing for the boy to live with them. Under the modification order, the boy will be residing with his father and paternal grandmother (age 65 at the time of the hearing) in the latter's home.

In my opinion the welfare of the boy in this case has been subjugated to a parochial view; further, that the mother who gave him birth and reared him for nearly 12 years is being judicially punished for moving to her new marital home in another State. The trial court's order is not supported by substantial evidence and erroneously applies the law governing modification of child custody. The affirmance of the order by this court is another log for the fires of the proponents of the Equal Rights Amendment.

I concur in the dissent of Judge Prewitt.

I would reverse the order of the trial court and remand the matter for further proceedings on the mother's motion for additional child support.

PREWITT, Judge, dissenting and concurring in dissent of BILLINGS, J.

I believe the record reflects that it is in the best interest of the child for him to be in the custody of his mother.

There are certain principles followed in considering a change of custody. When custody has once been adjudicated, it is presumed that the custodian remains suitable and the burden of proving a change of circumstances sufficient to call for a change of custody is on the party seeking the change. *In re Marriage of Britton,* 574 S.W.2d 475, 476 (Mo.App.1978). Custody should be transferred only where the change of circumstances and conditions are such that the welfare of the child requires it. Id. The change in circumstances must be such as to give definite promise that the custody change will substantially benefit the child. *Schmidt v. Schmidt,* 591 S.W.2d 260, 262 (Mo.App.1979). That children have grown older in and of itself is not a sufficient change of conditions to warrant a change of custody. *Engler v. Engler,* 455 S.W.2d 36, 41 (Mo.App.1970).

If the child involved is of sufficient age to form and express an intelligent preference as to custody, he should be permitted to do so, and the court should consider that preference along with the other facts and circumstances before it; but that preference should be followed only if the welfare and interest of the child, as determined by all the evidence, are consistent with that preference. *Kanady v. Kanady,* 527 S.W.2d 704, 707 (Mo.App.1975). The modification of a custody order should not turn upon the temporary whims or desires of a child. *J. v. E.,* 417 S.W.2d 199, 204 (Mo.App.1967).

The desire of an eleven year old to live with a parent is entitled to some weight, but is not decisive. *Schmidt v. Schmidt,* supra, 591 S.W.2d at 263. The undisputed fact that the child wants to live with a certain parent is not a sufficient basis for the award of custody to that parent. *Engler v. Engler,* supra, 455 S.W.2d at 41.

A change in custody should not be ordered just because a parent's visitation rights will be infringed. *Hahn v. Hahn,* 569 S.W.2d 775, 777 (Mo.App.1978). In affirming a judgment of the trial court granting a former wife permission to remove a minor child to another state, the western district of this court stated in *In re Marriage of Bard,* 603 S.W.2d 108 (Mo.App. W.D. 1980):

"Jurisdictional problems and visitation privileges of a noncustodial parent are not insuperable obstacles when removal of a minor child to another state is at issue. [citing cases] In our highly mobile society it would be unrealistic to inflexibly confine a custodial parent to a fixed geographical area if removal to another jurisdiction was consistent with the best interests of the minor child."

I agree that determination of factual issues rests in the trial court, and due deference is given to its findings. However, in this matter there was little, if any, real conflict in the evidence.

In considering the wishes of the child, it is important to ascertain and evaluate the basis for these wishes in order to place this element in its proper perspective in deciding what is in the best interest of the child. *In re Marriage of Campbell,* 599 S.W.2d 256, 258 (Mo.App.1980). A preference resulting from attention or influence can even provide a reason for denying custody to the parent displaying the attention or exerting the influence. Id. 599 S.W.2d at 259.

**252**

It is unrealistic to believe that the father did not intentionally and systematically influence the boy's decision. At first the child was excited about his mother's remarriage and was looking forward to moving to California but then changed his mind. That change was at least in part engineered by the father's improper actions. While being interviewed by the judge, the child stated:

"Well, you know, my dad and me, we got to talking about the schools in California. He said that in some areas the schools are not good and kids come to school with knives and guns, but–"

The transcript also reveals the following while the child was being questioned by appellant's attorney:

"Q. You're kind of–you said you felt you were worried about getting into fights out there in the California school?

A. Well, I said I was a little worried about maybe, you know, getting in a fight, since I didn't know and didn't want to know how.

Q. Did anybody tell you that the kids out there in school fight?

A. Do you mean besides the news?

Q. Besides the news, yeah.

A. Well, Eric and dad and a couple of other people."

Previous to the boy's testimony, the father was asked if he "told Alan that the school students in California carry knives and guns". He responded, "Not that I recall". He denied that he told Alan that the kids would mistreat him or beat him, and said ".  .  . there's been lots of things said and discussed, not only between Alan and myself, but dozens of people that we've met". It is totally unbelievable to me that the father could fail to recall whether they discussed students in California taking knives and guns to school or that "dozens of people" would discuss potential mistreatment in California with an eleven year old child who was contemplating living there. The father also promised the child a motorcycle and other prizes if he was allowed to stay in Missouri.

Child custody cases are difficult at every stage of the judicial process, and I am satisfied that the trial judge, as he always does, conscientiously and ably sought to do what was in the best interest of the child. However, in this instance I do not agree with that determination. Based on the principles that we follow in determining a child's best interests, I believe that the evidence was insufficient to justify a change in the custody. Moving to California is not sufficient alone, and the improperly influenced preference of the child is not entitled to sufficient weight to combine with the moving to make a sufficient change of conditions.

I concur in the dissent of Judge Billings and the proposed disposition set forth there.